EL CAJON CINEMAS, INC., a California corporation, Plaintiff,

v.

AMERICAN MULTI–CINEMA, INC., a Missouri corporation; Columbia Pictures Industries, Inc., a Delaware corporation; MGM/UA Entertainment, Inc., a Delaware corporation; Orion Pictures Corporation, a California corporation; Paramount Pictures Corporation, a Delaware corporation; Tri–Star Pictures, Inc., a Delaware corporation, Defendants.

AMERICAN MULTI–CINEMA, INC., a Missouri corporation, Counterclaimant,

v.

EL CAJON CINEMAS, INC., a California corporation, and George Krikorian, Counterdefendants.

EL CAJON CINEMAS, INC., a California corporation, Plaintiff,

v.

PACIFIC THEATRES CORPORATION, and Vista Theatres Corporation, Defendants.

PACIFIC THEATRES CORPORATION, a California corporation, and Vista Theatres Corporation, Counterclaimants,

v.

EL CAJON CINEMAS, INC., a California corporation, and George Krikorian, an individual, Counterdefendants.

No. 90–0710 IEG (P).

United States District Court, S.D. California.

Aug. 20, 1993.

---

14. Givenchy USA is, of course, entitled to seek actual damages and profits. 17 U.S.C. § 504(b).

Stephen M. Trattner, Lewis & Trattner, Washington, DC, Patrick J. Sullivan, James E. King, Solomon, Ward, Seidenwurm & Smith, San Diego, CA, for plaintiff/counter-defendant El Cajon Cinemas, Inc.

George A. Foster, Schall, Boudreau & Gore, San Diego, CA, Robert C. Hackett, David W. Dow, Mohr, Hackett, Pederson, Blakley, Randolph & Haga, P.C., Phoenix, AZ, for defendant/counterclaimant American Multi–Cinema, Inc.

Harry B. Swerdlow, Cooper, Epstein & Hurewitz, Beverly Hills, CA, Allan J. Reniche, Ferris & Britton, San Diego, CA, for

defendant/counterclaimant Pacific Theatres Corp.

ORDER ON PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER GRANTING SUMMARY JUDGMENT ON HORIZONTAL CONSPIRACY ISSUES AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' SECTION ONE COUNTERCLAIMS

GONZALEZ, District Judge.

Plaintiff El Cajon Cinemas, Inc. ("El Cajon") has requested that this Court reconsider and vacate its October 23, 1992 ruling, *El Cajon Cinemas, Inc. v. American Multi-Cinema, Inc.*, 1992–2 Trade Cas. ¶ 70,038, 1992 WL 370612 (S.D.Cal.1992), made as part of the summary judgment proceedings, with regard to the existence of an alleged horizontal conspiracy in violation of Section One of the Sherman Act (15 U.S.C. § 1) between motion picture exhibitor defendants (a) American Multi-Cinema, Inc. ("AMC") and (b) Pacific Theatres Corporation and/or Vista Theatres Corporation (collectively "Pacific"). El Cajon has also requested that this Court grant it summary judgment on the counterclaims of AMC and Pacific that El Cajon conspired with motion picture distributors to violate Section One of the Sherman Act.

The Court, having thoroughly reviewed the papers filed in support of and in opposition to the motion, and having heard arguments and comments of counsel, finds as follows:

### *MOTION FOR RECONSIDERATION OF EL CAJON'S HORIZONTAL CONSPIRACY CLAIM*

The motion is untimely in that it fails to comply with Local Rule 7.1 and Rules 59 and 60 of the Federal Rules of Civil Procedure. Although the motion is untimely, the Court has, nevertheless, elected to hear the request to reconsider its earlier ruling.

First, El Cajon contends that the holding by the Court was at odds with a rule that was set out in a particular Ninth Circuit case, *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*,

906 F.2d 432 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2274, 114 L.Ed.2d 725 (1991), and as echoed by the Supreme Court in *Eastman Kodak Company v. Image Technical Services, Incorporated,* —— U.S. ——, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992).

In particular, El Cajon focuses on one statement that was made in the Court's oral ruling when the Court said that, "El Cajon cannot prevail on a motion for summary judgment by presenting the Court with facts that are just as susceptible to an interpretation of proper conduct as improper conduct." El Cajon contends that this statement is at odds with the Ninth Circuit's interpretation in *Petroleum Products* of the Supreme Court's decision in *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court believes that El Cajon is correct that this statement is facially at odds with the Ninth Circuit's view in *Petroleum Products.* But a review of the evidence presented reveals that this statement really is not correct, so the Court will go behind the statement and look at the evidence. The Court inadvertently said something that it did not mean to say.

El Cajon presented evidence that, number one, both AMC and Pacific have similar alleged clearances over El Cajon and both declined to lift the alleged clearances; and two, after the commencement of the suit, an employee of Pacific inquired of an employee of AMC whether AMC was going to continue to request clearances over El Cajon in light of the pending lawsuit and the alleged requests by various distributors to discontinue clearances. The AMC employee replied only that Pacific would have to speak to the distributor about AMC's position on the alleged clearances. Three, that after the commencement of this suit, a Pacific executive and an AMC executive ran into one another at some kind of industry gathering and the Pacific executive inquired as to AMC's position regarding the alleged clearances and was told that he would, "hear about it," if AMC decided to lift the alleged clearances.

El Cajon, as the Court understands it, does not contest the finding that the parallel

conduct is insufficient to suggest conspiratorial objectives. Rather, El Cajon contends that the conversations, and the Court's mistaken comment that they are susceptible to an interpretation of improper conduct, requires reversal of the Court's ruling.

The real finding of the Court is found in the sentences preceding the offending sentence. The Court specifically found that the instances of contact between AMC and Pacific that were cited by El Cajon belie the sinister import that El Cajon would imply. Moreover, the Court specifically found that when Pacific attempted to initiate the conversations with AMC, that AMC declined to speak with Pacific on the issues, saying only either that Pacific would have to talk to the distributors about AMC's position on clearances, or that Pacific would probably hear about it if AMC decided to change its course regarding the clearances.

When AMC declined to speak to Pacific, the potential for a conspiracy, the Court finds, was wholly negated. To the extent that the word "conversation" implies an exchange of information between two parties, the Court finds that in this case there were no conversations using that definition. One party inquired and the other declined to comment, and that is the way the Court sees the evidence.

El Cajon's inference that this is conspiratorial conduct is not reasonable. To the extent that this Court suggested otherwise, it was mistaken, and any such finding is specifically stricken from the record. This Court never found, or at least never intended to find, that the evidence presented by El Cajon was susceptible to a conspiratorial interpretation. This Court believes that the ruling reflected in its order of October 23, 1992, *El Cajon Cinemas, Inc. v. American Multi-Cinema, Inc.*, 1992–2 Trade Cas. ¶ 70,038, 1992 WL 370612 (S.D.Cal.1992), is correct, and reaffirms that order.

### DEFENDANTS' SECTION ONE COUNTERCLAIMS

■ AMC and Pacific have counterclaimed against El Cajon based upon allegations that the lawsuit instituted by El Cajon against the distributors AMC and Pacific constituted

"sham" litigation. Under the *Noerr-Pennington* doctrine, the filing of a lawsuit is immune from the application of the antitrust laws unless the suit is a sham. *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mineworkers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1969).

■ In *Professional Real Estate Investors, Incorporated v. Columbia Pictures Industries, Inc.*, —— U.S. ——, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993), the Supreme Court outlined a two-part definition of sham litigation. Under the first part of this test, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail. Under this test AMC and Pacific must prove that the litigation against the distributors constituted the pursuit of a baseless claim so that a reasonable litigant could not realistically expect to secure favorable relief.

■ El Cajon has not cited, nor has the Court found, any case which holds that the mere fact that an action manages to survive a summary judgment motion automatically renders it immune under the *Noerr-Pennington* doctrine. Whether a claim is baseless is a question of law. Because the parties have not briefed this issue, this Court defers ruling on the questions whether the underlying litigation against the distributors was baseless. Therefore, for purposes of this motion for summary judgment, the Court will assume that AMC and Pacific survived this prong of the test for sham litigation.

■ Next, the Court must examine the litigant's subjective motive of bringing the action. Under the second prong of the Supreme Court's test for sham litigation, the focus is whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor through the use of the courts as anti-competitive weapons. Here, AMC and Pacific allege that

El Cajon instituted the proceedings against the distributors to force them into giving a certain percentage of their films to El Cajon even though it was not in their best interest to do so. The argument assumes that those films would have gone to one or the other of AMC and Pacific had they not been given to El Cajon. Thus, there is some evidence in the record from which a reasonable juror could determine that there had been interference with a business relationship through the use of this court and that the interference was anti-competitive.

El Cajon and AMC and Pacific at this point are in disagreement as to whether the conduct in question is a *per se* violation of antitrust law or is subject to the rule of reason. The operational difference between these two positions is whether AMC and Pacific are required to show relevant product and geographic markets. The Court finds that sham litigation is a *per se* violation of the antitrust laws, for there is no redeeming value to the practice. Therefore, there is no requirement that AMC and Pacific prove an anticompetitive effect upon a defined relevant market.

If AMC and Pacific establish the first two prongs, they are only required to show a causal antitrust injury and damages. AMC and Pacific are not required at this stage to make a detailed revelation of the actual amount of damages suffered. It is sufficient for the Court to determine that, should the theory of AMC and Pacific be accepted, a reasonable jury could find that damages were sustained. If the theory of AMC and Pacific is correct, they are damaged to the extent that a film was given to El Cajon when it might otherwise have been given to either or both AMC and Pacific.

For these reasons, El Cajon's motion for summary judgment on the counterclaims of AMC and Pacific is denied.

IT IS SO ORDERED.